1

2

3

4

5

6

7

8                                   UNITED STATES DISTRICT COURT

9                                   CENTRAL DISTRICT OF CALIFORNIA

10

11   TIANJIN PORT FREE TRADE ZONE                 No. ED CV 17-2127 PA (SHKx)
     INTERNATIONAL TRADE SERVICE
12   CO., LTD.,                                   FINDINGS OF FACT AND
                                                  CONCLUSIONS OF LAW
13                     Petitioner,

14          v.

15   TIANCHENG INTERNATIONAL, INC.
     USA,
16
                       Respondent.
17

18

19          Petitioner Tianjin Port Free Trade Zone International Trade Service Co., Ltd.

20   ("Tianjin Port Free") filed its Petition to Confirm Arbitration Award on October 17, 2017.

21   Respondent Tiancheng International, Inc. USA ("Tiancheng") responded to the Petition by

22   filing a Motion to Dismiss, which the Court denied.  Following the denial of Tiancheng's

23   Motion to Dismiss, the Court ordered the parties to meet and confer prior to proposing a

24   method for resolving their dispute concerning Tiancheng's proffered defenses to the

25   confirmation of the arbitration award.  After receiving the parties' proposals, the Court set

26   the matter for a Court Trial and established procedures for the filing of pre-trial documents.

27          Consistent with the Court's procedures, the parties have filed their Opening and

28   Responsive Trial Briefs, their respective Proposed Findings of Fact and Conclusions of Law,

their objections to each other's Proposed Findings of Fact and Conclusions of Law, and the declarations of the direct testimony of their proffered witnesses. The Court conducted a Court trial on September 18, 2018, and now makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

## I. **Findings of Fact**

1. This matter involves a petition to confirm a foreign arbitration award issued by the China International Economic and Arbitration Commission ("CIETAC") pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") and federal law implementing the New York Convention. See 9 U.S.C. §§ 201-208.

2. Tianjin Port Free is a company incorporated under the laws of China, with a principal place of business in the Tianjin Airport Economic Area, in Tianjin, China.

3. Tiancheng is organized under the laws of the State of California, with a principal place of business located at 2851 E. Philadelphia Street, Ontario, California, 91761.

4. CIETAC issued its Arbitral Award ("Arbitral Award") on October 9, 2015. Tianjin has provided the Court with a copy of the Arbitral Award that complies with the certification requirements for self-authentication of Foreign Public Documents pursuant to Federal Rule of Evidence 902(3). A copy of the Arbitral Award was admitted as Trial Exhibit 1 without objection. The Arbitral Award correctly lists Tiancheng's address as 2851 E. Philadelphia Street, Ontario, California.

5. According to the Arbitral Award, Tianjin Port Free submitted an application for arbitration to CIETAC on March 19, 2015.

6. According to the Arbitral Award, CIETAC sent an arbitration notice, a copy of the Arbitration Rules, and a list of the arbitrators to both Tianjin Port Free and Tiancheng by express mail service on May 13, 2015. CIETAC also sent an arbitration application and the

evidence submitted by Tianjin Port Free to Tiancheng.  The Arbitral Award states that it "was verified that the aforesaid notice and materials sent to the Respondent were duly served on May 18, 2015."

7.    According to the Arbitral Award, CIETAC sent a notice of fee payment to the parties via express mail service on June 17, 2015, and it was verified that Tiancheng was served with those materials on June 22, 2015.

8.    According to the Arbitral Award, CIETAC appointed an arbitrator and scheduled the arbitration for August 26, 2015, in Beijing, China.  CIETAC sent notice of the arbitration to Tiancheng on July 14, 2015, via express mail service, and confirmed that the notice had been duly served on July 17, 2015.

9.    According to the Arbitral Award, the arbitrator held an arbitration session on August 26, 2015.  Tiancheng did not appear at the session, and pursuant to CIETAC's arbitration rules, the arbitration proceeded by default, with Tianjin Port Free submitting evidence in support of its claim.  Following the arbitration session, Tianjin Port Free submitted additional evidence and explanations in support of its position.

10.    According to the Arbitral Award, CIETAC sent to Tiancheng, on September 1, 2015, the additional evidence and materials submitted by Tianjin Port Free by express mail service.  CIETAC informed Tiancheng that it had an opportunity to object to any of the procedural or substantive issues raised in the arbitration in writing.  CIETAC verified that the materials were duly served on Tiancheng on September 4, 2015.

11.    The Arbitral Award contains detailed findings as to the facts underlying the dispute between Tianjin Port Free and Tiancheng.  Among the findings are:

(a)    Tianjin Port Free and Tiancheng signed the March 5, 2014 contract (the "Contract"), in which Tianjin Port Free agreed to sell to Tiancheng quantities of goods, including Creatine Monohydrate, Betaine HCL, and Betaine Nitrate, for $547,000.00.

(b)    Tianjin Port Free sent a bill of lading to Tiancheng via DHL express mail service on March 13, 2014.

-3-

1            (c)     Tiancheng received the goods.

2            (d)     Tiancheng did not pay Tianjin Port Free for the goods despite demands

3    for payment.

4    12.     The copy of the Contract provided by Tianjin Port Free includes an arbitration

5    provision requiring "[a]ll disputes in connection with this contract" to be arbitrated by

6    CIETAC if the parties are unable to amicably settle the dispute through negotiation.  The

7    Contract is signed by "Lance" on behalf of Tiancheng.

8    13.     According to the Arbitral Award, prior to instituting the arbitration, Tianjin

9    Port Free contacted Tiancheng to seek payment for the goods, but Tiancheng's

10   representatives avoided meeting Tianjin Port Free's representatives.

11   14.     The arbitrator found in favor of Tianjin Port Free.  The Arbitral Award

12   requires Tiancheng to pay to Tianjin Port Free the sum of $547,000.00, plus attorneys' fees,

13   arbitration fees, and interest.

14   15.     Tiancheng opposes confirmation of the Arbitral Award based on its

15   contentions that there was never a contract between the parties, any such contract is a

16   forgery or otherwise unenforceable due to fraud, and Tiancheng never received notice of the

17   arbitration from CIETAC.  Specifically, Tiancheng asserts that although it has an employee,

18   Xiaoling Ding, who uses the nickname "Lance," the signature on the Contract by "Lance" is

19   not Xiaoling Ding's signature.  Tiancheng also contends that the prices for some of the

20   goods identified in the contract are as much as 12 times higher than Tiancheng normally

21   pays for such goods.  Tiancheng argues that this price disparity is evidence that the Contract

22   is fraudulent.  Finally, Tiancheng has proffered evidence from its employees and officers

23   claiming to have never received any of the arbitration documents sent by CIETAC to

24   Tiancheng.

25   **II.**    **Conclusions of Law**

26   1.      The statute implementing the New York Convention provides:

27        Within three years after an arbitral award falling under the

28        Convention is made, any party to the arbitration may apply to

-4-

any court having jurisdiction under this chapter for an order

confirming the award as against any other party to the

arbitration.  The court shall confirm the award unless it finds one

of the grounds for refusal or deferral of recognition or

enforcement of the award specified in the said Convention.

9 U.S.C. § 207.

2.    "The seven grounds for refusing to confirm an award are set out in Article V

of the Convention."  <u>Ministry of Defense and Support for the Armed Forces of the Islamic</u>

<u>Republic of Iran v. Cubic Defense Systems, Inc.</u> ("<u>Cubic</u>"), 665 F.3d 1091, 1096 (9th Cir.

2011).

3.    Under the New York Convention, a court can refuse recognition or

enforcement of an arbitration award in limited circumstances.  Specifically, Article V of the

New York Convention states:

1.    Recognition and enforcement of the award may be refused, at the

request of the party against whom it is invoked, only if that party

furnishes to the competent authority where the recognition and

enforcement is sought, proof that:

(a)    The parties to the agreement referred to in [A]rticle II were,

under the law applicable to them, under some incapacity, or the

said agreement is not valid under the law to which the parties

have subjected it or, failing any indication thereon, under the law

of the country where the award was made; or

(b)    The party against whom the award is invoked was not given

proper notice of the appointment of the arbitrator or of the

arbitration proceedings or was otherwise unable to present his

case; or

(c)    The award deals with a difference not contemplated by or not

falling within the terms of the submission to arbitration, or it

1   contains decisions on matters beyond the scope of the

2   submission to arbitration, provided that, if the decisions on

3   matters submitted to arbitration can be separated from those not

4   so submitted, that part of the award which contains decisions on

5   matters submitted to arbitration may be recognized and enforced;

6   or

7   (d)  The composition of the arbitral authority or the arbitral

8   procedure was not in accordance with the agreement of the

9   parties, or, failing such agreement, was not in accordance with

10  the law of the country where the arbitration took place; or

11  (e)  The award has not yet become binding on the parties, or has

12  been set aside or suspended by a competent authority of the

13  country in which, or under the law of which, that award was

14  made.

15  2.  Recognition and enforcement of an arbitral award may also be refused

16  if the competent authority in the country where recognition and

17  enforcement is sought finds that:

18  (a)  The subject matter of the difference is not capable of settlement

19  by arbitration under the law of that country; or

20  (b)  The recognition or enforcement of the award would be contrary

21  to the public policy of that country.

22  Cubic, 665 F.3d at 1096 n.2.

23  4.  "'[R]eview of a foreign arbitration award is quite circumscribed.' Rather than

24  review the merits of the underlying arbitration, we review de novo only whether the party

25  established a defense under the Convention." China Nat'l Metal Prods. Import/Export Co.

26  v. Apex Digital, Inc., 379 F.3d 796, 799 (9th Cir. 2004) (quoting Ministry of Defense of the

27  Islamic Republic of Iran v. Gould, Inc., 969 F.2d 764, 770 (9th Cir. 1992)).

28

5.    "The party seeking to avoid enforcement of the award . . . has the burden of showing the existence of a New York Convention defense" and that "burden is substantial because the public policy in favor of international arbitration is so strong, and the New York Convention defenses are interpreted narrowly." Polimaster Ltd. v. RAE Systems, Inc., 623 F.3d 832, 836 (9th Cir. 2010) (citations omitted).

6.    In seeking to avoid confirmation of the Arbitral Award because the Contract was forged or otherwise fraudulently procured, Tiancheng "has apparently confused the issue of a fraudulently obtained arbitration agreement or award, which might violate public policy and therefore preclude enforcement, with the issue of whether the underlying contract that is the subject of the arbitrated dispute was forged or fraudulently induced — a matter to be determined exclusively by the arbitrators." Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 315 (2d Cir. 1998) (citations omitted).

7.    The Court concludes that the issue of the alleged forgery of the signature of "Lance," and the other arguments concerning the fraudulent procurement of the Contract, including the asserted disparities in the prices Tiancheng claims to normally pay for similar goods and those charged by Tianjin Port Free, are matters to be determined exclusively by the arbitrator, and are not grounds under the New York Convention to deny confirmation of the Arbitral Award issued by CIETAC.

8.    Even if the Court were to accept as true the facts stated in the evidence submitted by Tiancheng during the Court Trial concerning the alleged forgery and other indicia of fraud, the Court would nevertheless conclude that this evidence falls short of satisfying the substantial burden Tiancheng must meet to establish a successful defense under the New York Convention.

9.    This conclusion is supported by the fact that Tiancheng does not dispute that it received the goods described in the Contract. Tiancheng has provided no credible evidence or explanation for why it did not contact Tianjin Port Free upon its receipt of $547,000.00 worth of goods it claims not to have ordered. At trial, Mr. Zhang testified that he believed the shipment had come from the supplier from which Tiancheng normally purchases such

goods. The Court concludes that this testimony does not explain why Tiancheng did not

contact its regular supplier or the party listed on the bill of lading when it received a large

shipment that Tiancheng claims not to have ordered. Moreover, the fact that Tiancheng

apparently was willing to accept the goods without question seriously undermines its

contention that it would not have agreed to the Contract because of what it claims are the

excessive prices of the goods. Nor does Tiancheng explain why it refused to communicate

with Tianjin Port Free when it informally attempted to resolve the dispute and obtain

payment. In the absence of such evidence or explanation, the Court concludes that

Tiancheng's denials of the existence of an agreement between the parties is not credible and

fails to satisfy the substantial burden Tiancheng must meet to qualify for a New York

Convention defense.

10.     In seeking to avoid confirmation of the Arbitral Award because it did not

receive notice of the arbitration proceeding, Tiancheng seeks to transform the New York

Convention's requirement that a party receive "proper notice" of an arbitration proceeding

into a requirement that the party receive "actual notice." However, "[i]n this context,

'proper notice' means notice that is reasonably calculated to apprise a litigant of arbitration

proceedings." Linley Investments v. Jamgotchian, 670 F. App'x 627, 628 (9th Cir. 2016).

Here, the Arbitral Award details CIETAC's efforts to provide proper notice to Tiancheng.

The Arbitral Award includes Tiancheng's correct address, and describes the dates, manner,

and verification of CIETAC's sending, by express mail service, at least four notices of the

arbitration proceeding to Tiancheng. Like the Ninth Circuit in Linley, this Court has "no

doubt that the notices . . . the arbitrator sent by mail . . . on numerous occasions over a six-

month period were reasonably calculated to apprise [respondent] of the overseas arbitration

instituted against [it]. [Respondent's] claim that [it] never received those notices is both

incredible and unpersuasive." Id. Additionally, for the same reasons that the Court found

Mr. Zhang's testimony to be insufficiently compelling to support Tiancheng's defense to the

existence of the Contract, the Court was similarly not persuaded by the testimony of

Tiancheng's professed lack of receipt of the notices sent by CIETAC. The Court therefore

concludes that Tiancheng has failed to satisfy its substantial burden to establish its New York Convention defense based on lack of proper notice.

11.     Because the appropriate requirement is "proper notice," rather than "actual notice," Tiancheng's witness testimony concerning Tiancheng's purported lack of receipt of materials from CIETAC, even if accepted as true, is not relevant to whether CIETAC complied with the New York Convention's "proper notice" standard. The Court therefore sustains Tianjin Port Free's objections to that testimony pursuant to Federal Rules of Evidence 401 and 402.

### Conclusion

For all of the foregoing reasons, the Court concludes that Tiancheng has failed to satisfy its burden to establish any defense to confirmation of the Arbitral Award under the New York Convention. The Court therefore grants Tianjin Port Free's Petition to Confirm Foreign Arbitration Award. Tianjin Port Free shall file a proposed Judgment by no later than October 1, 2018. Tiancheng shall file any objections to the proposed Judgment by no later than October 9, 2018. After that date, the Court will issue a Judgment Confirming the Arbitral Award.

IT IS SO ORDERED.

DATED: September 18, 2018

_____
Percy Anderson
UNITED STATES DISTRICT JUDGE